FILED
2017 Jun-02 PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| AMERICAN CHEMICALS & EQUIPMENT, INC. d/b/a AMERICAN OSMENT, | ) ) ) ) | |
| Plaintiff, | ) ) | 6:15-cv-00299-MHH |
| v. | ) ) | |
| CONTINENTAL CASUALTY COMPANY and CNA FINANCIAL CORPORATION, INC. | ) ) ) | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff American Chemicals & Equipment, Inc. d/b/a American Osment brings this action against defendants Continental Casualty Company and CNA Financial Corporation, Inc. alleging, among other things, that Continental breached the terms of an employment practices liability policy that the company issued to American Osment. (Docs. 1 & 7). American Osment relies on broad language in a general provision in the policy and argues that the general provision obligated Continental to provide a defense to American Osment in a state court action even if the state court claim is not covered under the policy. (Docs. 10 & 37). American Osment attempts to advance its duty to defend theory on behalf of a class of "all other policyholders of Defendant Continental, whose policy language regarding the

duty to defend claims mirrors the policy language in Plaintiff's policy, and who have reported claims, as that term is defined in the policy, to Defendant Continental for which Defendant Continental has refused to provide a defense." (Doc. 7, p. 9).

American Osment seeks summary judgment on its breach of contract claim against Continental regarding Continental's failure to provide a defense in the underlying lawsuit against American Osment.[1] (Doc. 11). Continental seeks summary judgment on American Osment's class action claim and moves to strike the class allegations in American Osment's complaint. (Docs. 29 & 31). Because American Osment's interpretation of its policy does not withstand scrutiny under Alabama's rules of contract interpretation, the Court denies American Osment's motion for summary judgment. The Court grants Continental's motion to strike and denies Continental's motion for summary judgment as moot. (Doc. 42). For the reasons stated below, the Court directs the parties to examine a coverage issue that neither American Osment nor Continental addressed in the summary judgment briefs.

---

[1] American Osment asserts a second breach of contract claim against Continental based on Continental's failure to pay a loss resulting from the underlying action. American Osment has not moved for summary judgment on that claim. (Doc. 7, pp. 5-6).

I.   **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Absent ambiguity, the interpretation of an insurance policy presents a question of law which a court may resolve summarily. *See e.g., Giddens v. Equitable Life Assur. Soc. of U.S.*, 445 F.3d 1286, 1297 (11th Cir. 2006); *Technical Coating Applicators, Inc. v. U.S. Fidelity Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998); *see also Cool Temp., Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 148 So. 3d 448, 454 (Ala. 2013). When considering a summary judgment motion, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

II.   **Relevant Facts and Procedural Background**

The Insurance Policy

Continental issued the employment practices liability policy at issue -- Epack Extra policy number 26764149 -- to American Osment on February 10, 2012. (Doc. 11-2, pp. 5-6). The policy was in force until May 9, 2014. (*Id.*, pp. 5-6, 9). The policy includes a set of general terms and conditions, a specific Employment Practices Liability Coverage Part which contains the insuring

3

agreement, and a glossary of defined terms. (*See* Doc. 11-2).[2] The relevant provisions in each section of the policy are as follows:

### 1. General Terms and Conditions

There are 24 separate sections in the general terms and conditions portion of the policy. Section I is titled "Terms and Conditions" and provides in part:

> If any provision in the General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

(Doc. 11-2, p. 10).

Section XXI is titled "Defense/Settlement/Mediation/Pre-Claim Assistance." This section of the general terms and conditions states:

> *Solely with respect to Liability Coverage Parts*, . . .
>
> The insurer has the right and duty to defend all Claims even if the allegations are groundless, false or fraudulent. The Insurer shall have the right to appoint counsel and to make such investigation and defense of a Claim as it deems necessary. Alternatively the Insurer may, at its option, give its written consent to the defense of any such Claim by the Insureds. The Insurer's obligation to defend any Claim or pay any Loss, including Defense Costs, shall be completely fulfilled and extinguished if the applicable limit of liability has been exhausted by payment of Loss.

(Doc. 11-2, p. 16) (emphasis added).

---

[2] Defined terms are capitalized in the policy. For the sake of consistency, defined terms in the policy are capitalized in this opinion.

## 2. Employment Practices Liability Coverage Part

The Employment Practices Liability (or EPL) Coverage Part describes the scope of the insuring agreement. The EPL states, in pertinent part:

> The Insurer shall pay on behalf of Insured that Loss, in excess of the retention and up to the applicable limit of liability, resulting from any Claim first made against the Insureds during the Policy Period . . . by or on behalf of [] a natural person who is an Employee . . . for a Wrongful Employment Practice as described in paragraphs 1 through 11 of the definition of Wrongful Employment Practice [or] any other natural person, for a Wrongful Employment Practice but solely to the extent that such Wrongful Employment Practice is as described in paragraph 12 of the definition of Wrongful Employment Practice.

(*Id.*, pp. 20-21).

The EPL Coverage Part also lists exclusions from coverage, including six exclusions that apply to all Loss and two exclusions that apply to Loss other than Defense Costs. (*Id.*). Among the exclusions that apply to all Loss, the following provision appears:

> The Insurer shall not be liable to pay any Loss under this Coverage Part in connection with any Claim made against any Insured [. . .] based upon or arising out of any actual or alleged violation of . . . any [] federal, state or local statutory law or common law anywhere in the world governing wage, hour and payroll policies.

(*Id.*).

## 3. Glossary of Defined Terms

The Policy's glossary provides the following relevant definitions:

Claim means [] a written demand for monetary or non-monetary relief . . . against an Insured alleging a Wrongful Act . . . . When used in the [. . .] Employment Practices Liability Coverage Part, Claim also

5

means [] a civil proceeding in a court of law or equity or any alternative dispute resolution proceeding . . . against an Insured, alleging a Wrongful Employment Practice, including any appeal therefrom. . . . However, Claim does not include any criminal proceeding, criminal administrative or criminal regulatory proceeding or criminal investigation.

Defense Costs with respect to all Liability Coverage Parts . . . means: 1. all fees charged by attorneys designated by the Insurer, and all reasonable fees charged by attorneys designated by the Named Insured with the Insurer's prior written consent; 2. all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim incurred by the Insurer or by the Insureds with the prior written consent of the Insurer; and 3. The costs of appeal, attachment or similar bonds.

Loss means [] damages, settlements, judgments . . . and Defense Costs for which the Insured is legally obligated to pay on account of a covered Claim . . . . [. . .] [S]olely with respect to the . . . Employment Practices Liability Coverage Part, Loss does not include . . . compensation earned by the claimant in the course of employment but unpaid by the Insured, including salary, wages, commissions, severance, bonus or incentive compensation . . . .

When used in the Employment Practices Liability Coverage Part, Wrongful Act means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the Insured Person in their capacity as such by an insured entity.

Wrongful Employment Practice means any Wrongful Act consisting of or relating to: . . . employment-related misrepresentation . . . .

(*Id.*, pp. 23, 25, 29, 39, 40).

The Underlying Action and American Osment's Claim

During the policy period, Steve Pate, a former American Osment employee, sued the company in the Circuit Court of Jefferson County, Alabama. Mr. Pate alleged that the company failed to pay him the salary and sales commission rate

6

that the company's president guaranteed him when he accepted an offer to work at American Osment. (Doc. 11-3, pp. 1-3). Mr. Pate sought damages from American Osment for breach of contract, fraud, work and labor done, and violations of § 8-24-1, *et seq.* of the Alabama Code, which entitles him to unpaid commissions at the time of his termination. (*Id.*, pp. 3-6). After receiving Mr. Pate's complaint, American Osment submitted a claim to Continental under the Policy, seeking defense and indemnity for the *Pate* action. (*See* Doc. 11-1, pp. 1-2).

Based on the information that American Osment provided, Continental denied coverage for the claim. (Doc. 11-4, pp. 1-2). Continental determined that the policy did not provide coverage for the *Pate* action because Section II(A)(6)(b) of the EPL Coverage Part "excludes any claim based upon [or] arising out of any actual or alleged violation of the Fair Labor Standards Act . . . or any other federal, state or local statutory law or common law anywhere in the world governing wage, hour and payroll practices." (*Id.*). Additionally, Continental noted Mr. Pate sought "to recover for *unpaid commissions*," and "Loss, with respect to the EPL Coverage Part . . . does not include any compensation earned by the claimant but unpaid by the Insured, including . . . commissions. . . ." (*Id.* at p. 2) (emphasis in original). Accordingly, Continental refused to provide American Osment with a defense or indemnity for the *Pate* action. (*Id.*).

7

The Present Action

After Mr. Pate agreed to settle his claims against American Osment, the company brought this action against Continental and CNA in the Circuit Court of Jefferson County, Alabama. American Osment asserts state law breach of contract and bad faith claims against Continental and negligence and wantonness claims against CNA. (Doc. 1-1). The defendants timely removed the action to federal court. (Doc. 1).[3]

---

[3] Continental and CNA Financial Corporation removed this case on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. To establish jurisdiction under § 1332, the defendants must demonstrate that the parties are completely diverse and that the amount in controversy exceeds $75,000. With respect to the citizenship prong of diversity jurisdiction, the defendants allege that American Osment is an Alabama corporation with its principal place of business in Birmingham, Alabama. (Doc. 1, ¶ 5). The defendants allege in the notice of removal that Continental is an Illinois corporation with its principal place of business in Chicago, Illinois. (Doc. 1, ¶ 6). The defendants allege that CNA is a Delaware corporation with its principal place of business in Chicago, Illinois. (Doc. 1, ¶ 6). Based on these allegations, the Court finds that the parties are completely diverse.

The Court also finds that more than $75,000 is in controversy. The defendants have established that American Osment settled the underlying state court action for $75,000, and American Osment incurred legal fees and expenses of $25,166 defending the underlying state court action. (Doc. 1, ¶ 3; Doc. 1-2). In addition, American Osment seeks an award of punitive damages under the bad faith and wantonness counts in its complaint. (Doc. 1-1). Therefore, the aggregate amount in controversy exceeds $75,000. *See State Farm Fire & Cas. Co. v. Knoblett*, 561 F. Supp. 2d 1256, 1257 (N.D. Ala. 2008) ("Because the instant suit involves only insurance coverage issues as they relate to the underlying state court action, the court must look to the amount in controversy in the underlying state court suit to determine the amount in controversy for the purposes of diversity jurisdiction."); *SUA Ins. Co. v. Classic Home Builders*, 751 F. Supp. 2d 1245, 1256 (S.D. Ala. 2010) (court may consider defense costs of an underlying action in determining the amount in controversy in a declaratory judgment action); *Rae v. Perry*, 392 Fed. Appx. 753, 755 (11th Cir. 2010) ("Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases.") (citing *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987).

American Osment then amended its complaint to add class allegations and class action claims against the defendants on behalf of a putative class of:

> all other policyholders of Defendant Continental, whose policy language regarding the duty to defend claims mirrors the policy language in [American Osment's] policy, and who have reported claims, as that term is defined in the policy, to Defendant Continental for which Defendant Continental has refused to provide a defense.

(Doc. 7, pp. 9-13). American Osment asserts generally that there are questions of law and fact common to each member of the putative class and specifically identifies the following common question:

> whether the obligation created by policy language stating that the Insurer has the right and duty to defend all claims even if the allegations are groundless, false or fraudulent can be limited to 'covered claims,' even though the policy defines claims as a written demand for monetary damages or non-monetary relief (including demands for injunctive or declaratory relief) against an Insured alleging a Wrongful Act, which means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the Insured Persons in their capacity as such or be an insured Entity.

(*Id.*, p. 110).

In sum, American Osment's class allegations and class action claims are based on its assertion that "[t]he policy does not limit the defense of claims to 'covered claims,'" which is the argument that American Osment pursues in its

---

Because the defendants have satisfied both of the criteria for diversity jurisdiction, the Court concludes that it may exercise jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 1332.

motion for partial summary judgment on its breach of contract claim against Continental based on Continental's failure to provide a defense for the *Pate* action. (Docs. 10 & 11). Continental opposes American Osment's motion for partial summary judgment and asks the Court to enter judgment on American Osment's putative class action claims against Continental and to strike American Osment's class allegations. (Docs. 28, 29 & 31). Continental's arguments in support of its motions raise the same issues that American Osment's motion for partial summary judgment presents, but American Osment has not responded to Continental's motions. (*Compare* Docs. 30 & 32 *with* Docs. 10, 28, 37 & 38). The Court stayed discovery in this matter, including discovery on American Osment's indemnity and class action claims, pending resolution of American Osment's motion for partial summary judgment. (Docs. 35 & 41). On this record, the Court addresses the pending motions.

### III. Analysis

As postured, the parties' pending motions rise and fall on American Osment's ability to prove that under Alabama law, Continental has a contractual duty based on a general term in the policy at issue to provide American Osment with a defense for claims that the policy explicitly excludes from coverage in more narrow provisions of the policy. Under settled principles of Alabama law, Continental has no such duty.

A. Relevant Principles of Alabama Law[4]

Under Alabama law, liability insurance policies such as the employment practices liability policy at issue in this action impose two separate duties on an insurer: the duty to defend and the duty to indemnify. *See, e.g., Cool Temp., Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 148 So. 3d 448, 455-56 (Ala. 2013). The two duties are related, but the duty to defend is broader than the duty to indemnify. *Id.* at 456. "Under Alabama law, whether an insurance company owes its insured a duty to provide a defense is determined primarily by the allegations contained in the complaint. If the allegations in the underlying complaint show an occurrence within the coverage of the policy, then the insured is obligated to defend, regardless of the ultimate liability of the insured." *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 894-95 (11th Cir. 2009) (citing *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)) (internal citation omitted). Accordingly, to determine if Continental had a duty to defend American Osment in the *Pate* action, the Court must look to the

---

[4] As a federal court sitting in diversity, this Court must apply the choice of law principles of Alabama, the forum state. *St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1 (11th Cir. 2009) (citation omitted). Absent a contractual provision identifying state law that the parties have selected to govern the interpretation of the contract, Alabama applies to contract disputes the law of the state in which the contract was formed. *Id.*; *see also Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007). For insurance policies, the state in which the policy was issued and delivered is the state in which the contract was formed. *Cherokee Ins. Co.*, 975 So. 2d at 293 (citation omitted). Because this matter involves the interpretation of an insurance policy issued and delivered in Alabama, Alabama substantive law applies. (*See* Doc. 11-2, p. 5)

allegations in Mr. Pate's state court complaint and compare those allegations to the language of the policy that Continental issued to American Osment. *ERA Oxford Realty*, 572 F.3d at 895.

When interpreting an insurance policy, a court must construe the policy "to give effect to the intention of the parties. . . ." *See Twin City Fire Ins. Co. v. Ala Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001) (quoting *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996) (internal marks omitted)). To determine the intent of the parties, "a court must examine more than [an] isolated sentence or term; it must read each phrase in the context of all other provisions." *Id.* Additionally, "a policy must be construed fairly, must effectuate its purpose, and must reflect common sense so as not to bring about an absurd result." *In re HealthSouth Corp.*, 308 F. Supp. 2d 1253, 1269 (N.D. Ala. 2004) (quoting *Boone v. Safeway Ins. Co. of Ala., Inc.*, 690 So. 2d 404, 406 (Ala. Civ. App. 1997) (internal marks omitted)).

"[I]t is well established 'that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured.'" *ERA Oxford Realty*, 572 F.3d at 898 (quoting *St. Paul Mercury Insurance Co. v. Chilton–Shelby Mental Health Center,* 595 So. 2d 1375, 1377 (Ala. 1992)). Accordingly, ambiguity in a policy must be

resolved against the insurer. *Id.* (citing *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005)).

If the terms of an insurance policy are not ambiguous, then a court must enforce the policy "as written and cannot defeat express provisions in a policy by making a new contract for the parties." *ERA Oxford Realty*, 572 F.3d at 898 (citing *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987)). "While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning." *Twin City Fire Ins. Co.*, 817 So. 2d at 692 (citation omitted). Moreover, the fact that different parties argue for different interpretations of an insurance policy is not enough to show the disputed policy language is ambiguous. *In re Healthsouth*, 308 F. Supp. 2d at 1268 (quoting *Woodall v. Alfa Mut. Ins. So.*, 658 So. 2d 369, 371 (Ala. 1995)). "Where the parties disagree on whether the language in an insurance [policy] is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it." *Certain Underwriters at Lloyd's, London v. Kirkland*, 69 So. 3d 98, 101 (Ala. 2011) (quoting *Twin City Fire Ins. Co.*, 817 So. 2d at 692) (internal marks omitted).

B. <u>American Osment's Motion for Summary Judgment</u>

American Osment argues that it is entitled to judgment as a matter of law on its breach of contract claim because the *Pate* action constitutes a Claim under the

policy, and Continental had a duty to defend American Osment against all Claims even if a Claim will not result in a Loss under the Policy. (Doc. 10, p. 7). Continental concedes that the *Pate* action is a Claim within the policy definition of that term. The Court agrees because the *Pate* action is a "written demand for monetary damages . . . against [American Osment] alleging a Wrongful Act" and is also a "civil proceeding in a court of law . . . against [American Osment], alleging [an employment-related misrepresentation] . . . ." (*See* Doc. 11-2, pp. 23, 24, 40). Nevertheless, Continental argues that it has no duty to defend American Osment for Claims that are not covered by the Policy, and the exclusions in the policy eliminate coverage for the Claim. (Docs. 28 & 38).

The policy provision American Osment relies upon to support its argument in favor of a duty to defend -- the "duty to defend all Claims" provision – appears in Section XXI of the Policy's general terms and conditions. (Doc. 11-2, p. 16). That provision begins as follows:

> *Solely with respect to Liability Coverage Parts*, . . . [t]he Insurer has the right and duty to defend all Claims even if the allegations are groundless, false or fraudulent.

(*Id.*; *see also* Doc. 10, p. 4) (emphasis added). American Osment focuses its attention on the "duty to defend all Claims" phrase in the provision and ignores the limiting introductory phrase "Solely with respect to Liability Coverage Parts." The plain language of that introductory phrase expressly links the scope of

14

Continental's duty to defend to the policy's specific Liability Coverage Parts. Under Alabama law, American Osment's attempt to divorce the introductory phrase from the coverage language fails. *Twin City Fire Ins. Co., supra* ("[A] court must examine more than the isolated sentence or term; it must read each phrase in the context of all other provisions."). Thus, the Court must examine the EPL Coverage Part provisions in the policy to evaluate the scope of Continental's duty to defend.

The insuring agreement in the EPL Coverage Part provides that Continental "shall pay on behalf of [American Osment] that Loss, in excess of retention and up to the applicable limit of liability resulting from any Claim first made against [American Osment] during the Policy Period . . . by or on behalf of . . . an Employee . . . for a Wrongful Employment Practice. . . ." (Doc. 11-2, p. 20). The EPL Coverage Part excludes from coverage "any Loss in connection with any Claim made against [American Osment] [. . .] based upon or arising out of any actual or alleged violation of . . . any [] federal, state or local statutory law or common law anywhere in the world governing wage, hour and payroll policies." (*Id.*, p. 21). In addition, the policy's glossary provides the following definition of "Loss" with respect to the EPL Coverage Part:

> Loss does not include . . . compensation earned by the claimant in the course of employment but unpaid by the Insured, including salary, wages, commissions, severance, bonus or incentive compensation . . .

15

(Doc. 11-2, p. 29).

Mr. Pate's claims in his state court complaint relate to his contention that American Osment failed to pay him the full salary and commissions that the company's president promised when American Osment hired Mr. Pate. (Doc. 11-3, p. 1). To recover unpaid wages and commissions, Mr. Pate asserted Alabama common law claims against American Osment for breach of contract, work and labor done, and promissory fraud. Mr. Pate also asserted a statutory claim against the company under Alabama Code § 8-24-1, *et seq.* Under each count of his complaint, Mr. Pate demanded unpaid commissions and reimbursement of improper charge-backs. (Doc. 11-2, pp. 3-6). Thus, to the extent that Mr. Pate sought unpaid commissions under Alabama law, the allegations of the state law complaint do not fall within the policy definition of Loss. Under the express language of Section XXI of the general terms and conditions of the policy, the specific EPL provisions limit the broad duty to defend language in the policy's general terms and conditions, and Continental does not have a duty to defend American Osment with respect to Mr. Pate's claims for unpaid commissions. (*See* Doc. 11-2, pp. 20-21, 23).[5]

---

[5] In its brief in support of summary judgment, American Osment acknowledges that the "policy provisions in the General Terms and Conditions apply to all of the specific coverages, but if a provision of the General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage part, then the coverage part controls. Section I. Terms and Conditions." (Doc. 10, p. 4). The Court does not find that general term XXI is inconsistent with the EPL coverage provisions, but even if the provisions were inconsistent, American Osment's

16

Therefore, the Court denies American Osment's motion for summary judgment on its breach of contract claim. Because American Osment's class allegations are premised upon American Osment's misinterpretation of Section XXI, the Court grants Continental's motion to strike the class allegations in Counts VII and VIII of American Osment's amended complaint.

## IV. Conclusion

For the reasons discussed above, the Court **DENIES** American Osment's motion for partial summary judgment. The Court **GRANTS** Continental's motion to strike the class allegations and denies Continental's motion for summary judgment as moot. The order denying American Osment's summary judgment motion does not resolve as a matter of law the question of Continental's duty to defend American Osment in the *Pate* action. In Count Four of his complaint, Mr. Pate asserted a claim for promissory fraud and demanded not only unpaid commissions but also "such other damages as are available by law." (Doc. 11-3, p. 6). Under Alabama law, a plaintiff who establishes a claim for promissory fraud may recover compensatory and punitive damages. Alabama Law of Damages § 36:32 (6th ed.) ("The victim of actual fraud may bring an action at law, sounding in tort, against the offending party or one benefiting from the fraud and may obtain compensatory damages suffered as a result of the fraud. . . . The plaintiff is entitled

---

recognition that the policy's narrow coverage provisions trump the general terms defeats American Osment's legal arguments regarding the duty to defend.

to punitive damages when there is clear and convincing evidence that the fraud is malicious, oppressive, or gross, and the misrepresentation is made with knowledge of its falsity and with the purpose of injuring."); *see also* Ala. Code § 6-11-20(a).

Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, on or before June 17, 2017, Continental shall submit a brief in which it shall explain whether the policy provides coverage for punitive damages that in turn would give rise to a duty to defend Mr. Pate's fraud claim.[6] American Osment may file a reply brief on or before July 1, 2017.[7]

**DONE** and **ORDERED** this June 2, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[6] Under Alabama law, "[w]hen a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1010 (Ala. 2005) (quoting *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001)).

[7] The Court apologizes to the parties for the delay in issuing this opinion.