UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |  |
|---|---|---|
| AMERICAN CHEMICALS & EQUIPMENT, INC. d/b/a AMERICAN OSMENT, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 6:15-cv-00299-MHH |
| CONTINENTAL CASUALTY COMPANY and CNA FINANCIAL CORPORATION, INC. | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this action, plaintiff American Chemicals & Equipment, Inc. d/b/a American Osment contends that defendants Continental Casualty Company and CNA Financial Corporation, Inc. breached the terms of an employment practices liability policy that the company issued to American Osment. American Osment asserts breach of contract, bad faith, negligence, and wantonness claims against the defendants.

On June 2, 2017, the Court entered a memorandum opinion and order denying American Osment's motion for summary judgment on its breach of contract claim against Continental regarding Continental's failure to provide a

defense in an underlying lawsuit that a former employee filed against American Osment.[1] (Doc. 11).

In its June 2, 2017 memorandum opinion and order, pursuant to Federal Rule of Civil Procedure 56(f), the Court directed the parties to examine a coverage issue that neither American Osment nor Continental addressed in the summary judgment briefs: whether the policy provides coverage for punitive damages that would give rise to duty a defend the state court action.

Having considered the parties' arguments (*see* Doc. 46; Doc. 47), and with the benefit of oral argument, the Court finds in favor of American Osment on its breach of contract claim.

**I.    Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Absent ambiguity, the interpretation of an insurance policy presents a question of law which a court may resolve summarily. *See e.g., Giddens v. Equitable Life Assur. Soc. of U.S.*, 445 F.3d 1286, 1297 (11th Cir. 2006); *Technical Coating Applicators, Inc. v. U.S. Fidelity Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998); *see also Cool Temp., Inc. v. Pennsylvania Nat.*

---

[1] American Osment asserts a second breach of contract claim against Continental based on Continental's failure to pay a loss resulting from the underlying action. American Osment did not move for summary judgment on that claim, its bad faith claim, its negligence claims, or its wantonness claims. (Doc. 7, pp. 5-8).

*Mut. Cas. Ins. Co.*, 148 So. 3d 448, 454 (Ala. 2013). When considering a summary judgment motion, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *Bivens v. Bank of America, N.A.*, 868 F.3d 915, 918 (11th Cir. 2017).

## II. Relevant Facts

### A. The Insurance Policy's Punitive Damages Clause

Continental issued the employment practices liability policy at issue -- Epack Extra policy number 26764149 -- to American Osment on February 10, 2012. (Doc. 11-2, pp. 5-6). The policy was in force until May 9, 2014. (*Id.*, pp. 5-6, 9). The policy includes a set of general terms and conditions, a specific Employment Practices Liability Coverage Part which contains the insuring agreement, and a glossary of defined terms. (*See* Doc. 11-2). The Employment Practices Liability (or EPL) Coverage Part provides coverage for Loss on account of a Claim against an Insured for a Wrongful Employment Practice. (Doc. 11-2, p. 20).

Under the policy, the definition of "Loss" includes: "punitive and exemplary damages and the multiplied portion of multiplied awards (subject to this

3

Policy's other terms, conditions and limitations). Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiplied amounts." (Doc. 11-2, p. 29). The EPL defines "applicable law" to include the law of the jurisdiction where the Insured is incorporated. (Doc. 11-2, p. 29). American Osment is incorporated in Alabama. (Doc. 7, ¶ 1).

### B. Allegations of Promissory Fraud in the Underlying State Court Action

During the policy period, Steve Pate, a former American Osment employee, sued the company in the Circuit Court of Jefferson County, Alabama. In his state court complaint, Mr. Pate alleged that the company failed to pay him the salary and sales commission rate that the company's president guaranteed him when he accepted an offer to work at American Osment. (Doc. 11-3, pp. 1-3). Mr. Pate's complaint contains a promissory fraud claim. (Doc. 11-3, p. 6).

In support of his fraud claim, Mr. Pate alleged that before he entered an employment agreement with American Osment, the company's president "represented that he would pay Pate $120,000.00 plus commissions at the rate of thirty-six percent (36%)." (Doc. 11-3, p. 6, ¶ 36; *see also* Doc. 11-3, p. 1, ¶ 2). According to Mr. Pate, "[a]t the time these statements were made, [American Osment's president] had no intention of paying Pate $120,000.00 and thirty-six percent (36%) commissions but instead, only intended to pay him [Pate]

4

$100,000.00 and thirty-two percent (32%) commissions." (Doc. 11-3, p. 6, ¶ 36; *see also* Doc. 11-3, p. 1, ¶ 3). Mr. Pate alleged that he "believed the representations" that American Osment's president made, and, "in reasonable reliance on those representations," entered an employment agreement with the company to work as a commissioned sales representative. (Doc. 11-3, p. 6, ¶ 37; *see also* Doc. 11-3, p. 1, ¶ 4). According to Mr. Pate, he signed the employment agreement as a result of "fraudulent conduct." (Doc. 11-3, p. 6, ¶ 37).

When Mr. Pate discovered that American Osment was paying him thirty-two percent (32%) commissions instead of thirty-six percent (36%) commissions, Mr. Pate met with American Osment's president who stated that "it was a lie that he said he would every pay Pate thirty-six percent (36%) commission and that he was never offered thirty-six percent (36%)." (Doc. 11-3, p. 2, ¶ 9). During another meeting, Mr. Pate showed American Osment's president the signed employment agreement that stated that Mr. Pate "was to be paid thirty-six percent (36%) commissions." (Doc. 11-3, pp. 2-3, ¶ 10). American Osment's president "disagreed that he had ever agreed to the thirty-six percent (36%) commissions and stated that he would get back with" Mr. Pate. (Doc. 11-3, p. 3, ¶ 10). During a follow-up meeting, American Osment's president told Mr. Pate that "he had never offered him thirty-six percent (36%) commission," and American Osment's

president offered Mr. Pate $12,000 "to remedy the situation." (Doc. 11-3, p. 3, ¶ 12).

As part of his fraud claim, Mr. Pate sought compensatory damages and "such other damages as are available by law." (Doc. 11-3, p. 6).

**III. Analysis**

Continental concedes that the EPL "provides coverage for punitive damages, subject to all other policy terms and conditions." (Doc. 46, p. 3). Continental argues that it has no duty to defend because although Mr. Pate asserts a promissory fraud claim, he does not assert a claim for punitive damages, and even if he did, because the fraud claim is related to an alleged breach of an employment contract, the EPL excludes coverage for Mr. Pate's fraud claim. The Court is not persuaded.

> **A. The EPL Provides Coverage for Punitive Damages, and Mr. Pate Adequately Alleged a Promissory Fraud Claim that Will Support a Punitive Damages Award under Alabama Law**

"Under Alabama law, whether an insurance company owes its insured a duty to provide a defense is determined primarily by the allegations contained in the complaint. If the allegations in the underlying complaint show an occurrence within the coverage of the policy, then the insured is obligated to defend, regardless of the ultimate liability of the insured." *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 894-95 (11th Cir. 2009) (citing *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala.

6

1985)) (internal citation omitted). "Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005). "If the complaint is ambiguous, [] it should be 'liberally construed in favor of the insured.'" *Pharmacists Mutual Ins. Co. v. Godbee Med. Distributors, Inc.*, 733 F. Supp. 2d 1283 (M.D. Ala. 2010) (quoting *Ladner & Co., Inc. v. So. Guaranty Ins. Co.*, 347 So. 2d 100, 103 (Ala. 1977)); *see also* Scott C. Turner, Insurance Coverage of Construction Disputes § 7.3 ("Courts liberally construe the allegations of a claimant's pleadings toward a finding of coverage.").

The allegations in Mr. Pate's state court complaint state a claim for promissory fraud. "A claim of promissory fraud is 'one based upon a promise to act or not to act in the future.'" *Ex parte Michelin North America, Inc.,* 795 So. 2d 674, 678 (Ala. 2001) (quoting *Padgett v. Hughes,* 535 So. 2d 140, 142 (Ala. 1988)). Under Alabama law, to state a claim for promissory fraud, a plaintiff must allege facts showing:

> (1) a false representation; (2) of an existing material fact; (3) that is reasonably relied upon; (4) damage resulting as a proximate cause; (5) that at the time of the misrepresentation, the defendant had the intention not to perform the promised act; and (6) that the defendant had an intent to deceive.

7

*Target Media Partners Operating Co., LLC v. Specialty Marketing Corp.*, 177 So. 3d 843, 866-67 (Ala. 2013) (internal quotation marks, citation, and alterations omitted).

Here, Mr. Pate alleged that before he entered an employment agreement with American Osment, the company's president "represented that he would pay Pate $120,000.00 plus commissions at the rate of thirty-six percent (36%)." (Doc. 11-3, p. 6, ¶ 36; *see also* Doc. 11-3, p. 1, ¶ 2). Mr. Pate also alleged that "[a]t the time these statements were made, [American Osment's president] had no intention of paying Pate $120,000.00 and thirty-six percent (36%) commissions but instead, only intended to pay him [Pate] $100,000.00 and thirty-two percent (32%) commissions." (Doc. 11-3, p. 6, ¶ 36; *see also* Doc. 11-3, p. 1, ¶ 3). Mr. Pate alleged that he "believed the representations" that American Osment's president made, and "in reasonable reliance on those representations" entered an employment agreement with the company to work as a commissioned sales representative. (Doc. 11-3, p. 6, ¶ 37; *see also* Doc. 11-3, p. 1, ¶ 4). Accordingly, Mr. Pate stated a promissory fraud claim.

Under Alabama law, punitive damages are available in promissory fraud cases. *See Exxon Mobil Corp. v. Ala. Dep't of Conservation & Natural Resources*, 986 So. 2d 1093, 1130 (Ala. 2007) (Lyons, J., concurring) ("[I]f a promise to perform in the future is made with no intention to perform at the time the promise

was made, it is promissory fraud and will give rise to an action in tort for which compensatory and punitive damages may be recovered.") (citing *Kennedy Elec. Co. v. Moore-Handley, Inc.*, 437 So. 2d 76 (Ala. 1983)) (emphasis omitted); *Sealing Equipment Products Co., Inc. v. Velarde*, 644 So. 2d 904, 908-11 (Ala. 1994) (affirming punitive damages award in promissory fraud action); *General Motors Acceptance Corp., Inc. v. Covington*, 586 So. 2d 178, 184 (Ala. 1991) (affirming punitive damages award because the plaintiff presented sufficient evidence on the elements of promissory fraud to create a jury question, and jury found in favor of the plaintiff on his claim of misrepresentation). Under Alabama law, if a plaintiff establishes "by clear and convincing evidence that the defendant consciously or deliberately engaged in . . . fraud . . . with regard to the plaintiff," then the plaintiff may recover punitive damages. Ala. Code § 6-11-20(a). [2]

Continental contends that it owed no duty to defend American Osment because Mr. Pate's complaint did not contain a specific demand for punitive damages and because Mr. Pate did not allege facts suggesting "malicious,

---

[2] Alabama's punitive damages statute defines fraud as:

> [a]n intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.

Ala. Code § 6-11-20(b)(1).

9

oppressive or gross" conduct, which Continental maintains is required to support a punitive damages award. The Court disagrees.

Mr. Pate's complaint contains clear allegations of promissory fraud, and the conduct alleged is the sort of malicious, oppressive, or gross conduct that supports a punitive damages award under Alabama law. *See* pp. 4-6, above (factual allegations in *Pate* complaint); pp. 8-9, above (Alabama decisions regarding punitive damages in fraud cases).

In *General Motors*, the Alabama Supreme Court affirmed a punitive damages award in a promissory fraud case and rejected the defendant's argument that the plaintiff had not presented "evidence of gross, malicious, or oppressive conduct on the part of [the defendant] to support an award of punitive damages." *General Motors*, 586 So. 2d at 181, 184. The Alabama Supreme Court explained:

> an examination of the record reveals that Covington presented sufficient evidence of the elements of promissory fraud to create a jury question, and it was such that the jury could reasonably infer that Covington was defrauded by Ms. Oliver's representation. Given the fact that there was sufficient evidence of both elements of promissory fraud—a present intent to deceive and an intent not to perform the promise—the question of punitive damages was properly submitted to the jury. *Carnival Cruise Lines, Inc. v. Goodin,* 535 So. 2d 98 (Ala. 1988). Therefore, the jury, in finding in favor of Covington on his claim of misrepresentation, was justified in awarding punitive damages in an amount that it saw fit to award.

*General Motors*, 586 So. 2d at 184. In affirming the punitive damages award, the Alabama Supreme Court found that because the plaintiff submitted sufficient

evidence on the elements of his promissory fraud claim, the trial court properly submitted the punitive damages question to the jury. *General Motors*, 586 So. 2d at 184.

In *Sealing Equipment Products*, the Alabama Supreme Court affirmed a promissory fraud punitive damages award in a case involving a plaintiff's claim that his employer promised to pay him certain commissions, but when the employer made the promise, the employer had no intention of honoring the commitment. *Sealing Equipment Products*, 644 So. 2d at 908-11. The employer argued on appeal that the plaintiff "failed to submit clear and convincing evidence to support his claim of promissory fraud," and therefore, the trial court erred when it submitted the promissory fraud claim to the jury. *Sealing Equipment Products*, 644 So. 2d at 909. The Alabama Supreme Court affirmed the trial court's decision to submit the plaintiff's claim for punitive damages to the jury because the record "reveal[ed] credible evidence from which the jury could have drawn inferences to support the verdict." *Sealing Equipment Products*, 644 So. 2d at 909-10. For example, the Alabama Supreme Court explained that from the plaintiff's evidence, the jury could have drawn inferences supporting the plaintiff's contention that his employer knew, before it hired the plaintiff, that the company did not intend to pay the amount of commissions promised. *Sealing Equipment Products*, 644 So. 2d at 909. As in *General Motors*, the Alabama Supreme Court's decision in *Sealing*

*Equipment Products* did not turn on whether the plaintiff had pleaded or proven gross, malicious, or oppressive conduct.

Given the clear allegations of promissory fraud in Mr. Pate's complaint, Alabama law regarding punitive damages in promissory fraud cases, and the legal standard that requires a court to liberally construe the allegations in the complaint in an underlying action in favor of coverage, the Court finds that Mr. Pate's request for compensatory damages and "such other damages as are available by law" (Doc. 11-3, p. 6) is sufficient to trigger Continental's duty to provide a defense to American Osment given the policy's coverage for punitive damages. Accordingly, the Court finds that Continental owed a duty to defend American Osment.[3]

> **B. The EPL's Exclusion from Covered Loss of Punitive Damages Resulting from a Knowing Violation of a Written Employment Contract Does Not Eliminate Continental's Obligation Under the EPL to Provide a Defense to American Osment in Mr. Pate's State Court Action**

Continental argues that it nonetheless does not have a duty to defend Mr. Pate's promissory fraud claim because his claim "necessarily rests on American Osment's entry into and purported knowing breach of its employment agreement with [Mr. Pate]" (Doc. 46, p. 6), and the EPL expressly states that "Loss does not

---

[3] Under Alabama law, when an insurer owes a duty to defend at least one claim in an underlying action, the insurer must provide a defense for all claims, even claims that the policy does not cover. *Universal Underwriters Ins. Co. v. East Cent. Alabama Ford-Mercury, Inc.*, 674 So. 2d 716, 719 (Ala. 1990) (citing *Ladner*, 347 So. 2d at 100). This is because under Alabama law, the duty to defend is broader than the duty to indemnify. *Ladner*, 347 So. 2d at 102 ("It is well established that the insurer's duty to defend is more extensive than its duty to pay.").

include … any amounts for which an insured is liable due to an act or omission in knowing violation of any written contract of employment." (Doc. 11-2, p. 29, ¶ II.3). Again, Continental's argument is inconsistent with Alabama law.

"In Alabama, a single transaction can support an award of damages for both breach of contract and fraud." *Deupree v. Butner*, 522 So. 2d 242, 244 (Ala. 1988) (citing *Herring v. Prestwood*, 414 So. 2d 52 (Ala. 1982)); *see also Combined Servs., Inc. v. Lynn Elecs. Corp.*, 888 F.2d 106 (11th Cir. 1989) ("Alabama courts have consistently held that, where a party fraudulently conceals or misrepresents facts relating to its intention or ability to perform under a contract … a plaintiff is not required to elect between contract and fraud remedies."). However, "a fraud claim cannot be maintained simply because a party—even mistakenly, intentionally, or maliciously—did not properly perform a contractual obligation." *Hunt Petroleum Corp. v. State of Alabama*, 901 So. 2d 1, 12 (Ala. 2004) (Houston, J., concurring). Rather, "the fraud claim must be based on representations independent from the promises in the contract and must independently satisfy the elements of fraud." *Muncher v. NCR Corp.*, 2017 WL 2774805, at *16 (N.D. Ala. June 27, 2017).

Mr. Pate's complaint contains clear allegations of promissory fraud, separate and distinct from his breach of contract claim. *See* pp. 4-6, 8, above. With respect to Mr. Pate's fraud claim, Mr. Pate alleged that American Osment entered into an

employment contract with him even though the company had no intention of performing its obligations under the contract, and that his reasonable reliance upon the company's misrepresentations induced him to enter into the contract. (Doc. 11-3, p. 6, ¶¶ 35-37). With respect to Mr. Pate's breach of contract claim, Mr. Pate alleged that he suffered damages as a result of American Osment's failure to perform its obligations under the employment contract that existed between the parties. (Doc. 11-3, p. 6, ¶¶ 16-19). "The fact that the measure of damages may be the same for both causes of action does not make the fraud claim disappear." *Muncher*, 2017 WL 2774805, at *16 (quoting *Dickinson v. Land Developers Construction Co.*, 882 So. 2d 291, 304 (Ala. 2003) (Houston, J., concurring)).

## IV. Conclusion

For the reasons stated above, the Court finds that Continental had a duty to defend American Osment against Mr. Pate's action against the company. Accordingly, the Court finds in favor of American Osment on its breach of contract claim.

**DONE** and **ORDERED** this September 21, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE